Kenneth E. O'Harra v. Commissioner. O'Harra Transportation Company, Inc. v. Commissioner.
Kenneth E. O'Harra v. Commissioner
Docket Nos. 15290,15291.
United States Tax Court
1953 Tax Ct. Memo LEXIS 4; 12 T.C.M. (CCH) 1459; T.C.M. (RIA) 54008; December 31, 1953
*4 John H. Pigg, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined deficiencies in income tax, declared value excess-profits tax, excess profits tax, and penalties as follows: Kenneth E. O'Harra, Docket No. 15290
25% Delinquency
50% Fraud
Year
Income Tax
Penalty
Penalty
1943
$3,911.50
None
$1,955.75
1944
3,766.86
None
1,883.43
1945
2,819.31
$ 704.83
1,409.65
O'Harra Transportation Company, Inc., Docket No. 15291
Declared Value
Excess
25%
Income
Excess-Profits
Profits
Delinquency
50% Fraud
Year
Tax
Tax
Tax
Penalties
Penalties
(Total)
(Total)
1943
$1,625.13
$8,038.89
$52,762.75
$13,190.69
$31,213.40
1944
5,084.76
4,355.62
11,794.09
4,836.59
10,617.23
1945
773.84
1,655.51
None
None
None
Petitioners having failed to appear at the hearing, and a motion for judgment in respondent's favor having been granted as to all matters on which petitioners had the burden of proof, the only remaining issue is whether the fraud penalties were properly determined. Findings *5 of Fact Petitioner O'Harra Transportation Company, Inc., hereinafter sometimes referred to as "the corporation," was incorporated in 1940 under the laws of the Territory of Alaska, and was engaged in the bus transportation business, with its principal office and place of business at Anchorage, Alaska. The corporation's bus routes were between Anchorage and Fort Richardson, and other points in Alaska. Petitioner Kenneth E. O'Harra, hereinafter sometimes referred to as "petitioner," resides at Anchorage, Alaska. During the taxable years he and his wife, Audrey Richardson O'Harra, were president and secretary-treasurer, respectively, of the corporation. The corporation's income and declared value excess-profits tax returns for the taxable years 1943 and 1944 were filed with the then collector of internal revenue for the district of Washington. No excess profits tax return was filed by the corporation for either of those years. Petitioner's individual returns for the taxable years 1943 and 1944 were filed in the same collection district. On its income and declared value excessprofits tax return for the year 1943, the corporation reported gross receipts of $135,709.69, a net income *6 of $3,330.76 and an income tax liability of $832.69. On its return for the year 1944, the corporation reported gross receipts of $139,072.59 and a net loss of $36,943.99. Some time after respondent's agents had commenced their investigation of the corporation's returns for the years 1943 and 1944, either petitioner or his accountant, William W. Head, delivered to one of such agents a document purporting to be an "amended return" of the corporation for the year 1943, disclosing thereon a net income of $20,382.38 and an income tax liability of $4,143.98. This undated document, though signed by petitioner and his wife in their respective capacities of president and secretary-treasurer of the corporation, was not sworn to by either of them, nor was it filed with the collector for any collection district. On his individual returns for the years 1943 and 1944, petitioner reported net losses in the respective amounts of $55.83 and $6,645.05. He did not file a return for the calendar year 1945. Except for bank statements of both the corporation and petitioner, some corporate records relating to the Star Cafe, several canceled checks, and a small number of paid bills and invoices, the *7 only accounting or other records made available by petitioner or his accountant to respondent's agents during the course of their investigation were (1) a cash receipts and disbursements journal, labeled "Shaw's All-Facts Bookkeeping System," covering the period January 1, 1942, to November 30, 1943, and (2) another cash receipts and disbursements journal, labeled "Greenwood's Approved Business and Income Tax Record," covering the calendar years 1943 and 1944. All entires contained in both of these books were made by petitioner's wife, Audrey Richardson O'Harra. The "Shaw" book is the original record of the cash receipts and disbursements, as recorded by Mrs. O'Harra, resulting from the operations of the corporation during the period January 1, 1942, to November 30, 1943. The "Greenwood" book, insofar as it covers the same period as the "Shaw" book, purports to contain entries relating to the cash receipts and disbursements resulting from the same corporate transactions as those appearing in the "Shaw" book for the corresponding period. The total cash receipts by the corporation during that period as shown in the "Shaw" book is $39,461.32 greater than the amount shown by the corresponding *8 rewritten entries in the "Greenwood" book. During some part of the period covered by these proceedings, petitioner served in the armed forces of the United States, and, except for a period of about six weeks, when he was on detached duty at Fairbanks, Alaska, his entire military service was performed at Fort Richardson, about six miles distant from Anchorage. In his attempted explanation of the existence of the duplicate set of book entries petitioner stated under oath to respondent's agents that he contacted the army legal officer at Fort Richardson and was advised by that officer that so long as he remained in the military service he was not required to file an individual income tax return; and further, that the purpose of the re-written entries in the "Greenwood" book was to separate his personal income from that of the corporation. No part of the income represented by the above-described discrepancy of $39,461.32 between the "Shaw" and "Greenwood" books was reported in petitioner's original individual income tax returns for the years 1943 and 1944, nor was any part of that amount reported in an amended return filed by him on or about June 13, 1946, for the year 1943. In the *9 amended return, he reported $3,986.78 as salary received by him from the corporation in 1943, which amount was not reported in his original return. Respondent determined the total additions to the corporation's income as reported by it for the taxable years 1943 and 1944, as follows: Description of additions
1943
1944
Gross receipts under-
stated
$49,206.83
$92,945.62
Profits from Star Cafe
omitted
309.80
Expenses overstated
17,528.55
Mathematical error
30.00
Capital gain unreported
586.87
Total additions
$67,075.18
$93,532.49
The gross receipts item of $49,206.83 for the year 1943 was arrived at by taking the total bank deposits of the corporation for that year, and eliminating therefrom all deposits identifiable as loans, transfers, or other non-income items. The same is true with respect to the gross receipts item of $92,945.62 for the year 1944. Of the gross receipts item of $49,206.83 for the year 1943, the amount of $39,461.32 is accounted for by the discrepancy between the "Shaw" and the "Greenwood" books. Respondent determined the total additions to the individual income reported by petitioner for the years 1943 and 1944, and his *10 total income for the year 1945, for which no return was filed, as follows: Description of
additions
1943
1944
1945
Salary unre-
ported
$ 3,986.78
$ 7,649.64
Business loss
unallowable
55.83
8,632.47
Unreported
income
9,965.37
5,830.51
$13,266.33
Total additions
$14,007.98
$22,112.62
$13,266.33
The unreported salary item for the year 1943 is the same salary shown on petitioner's "amended return" for that year. The unreported salary item for the year 1944 was arrived at by taking the total salary checks issued by the corporation to petitioner during that year. The unreported income item of $9,965.37 for the year 1943 was arrived at by taking the total of petitioner's bank deposits for that year, and subtracting therefrom all identifiable non-income items. The corresponding amounts of $5,830.51 and $13,266.33 for the years 1944 and 1945, respectively, were similarly arrived at. Petitioner and his wife, in their respective capacities of president and secretary-treasurer of the corporation, were jointly indicted on two counts, namely, (1) for willfully and knowingly aiding, assisting and counseling in the preparation and filing of a false and *11 fraudulent income and declared value excess-profits tax return for the corporation for the taxable year 1943, and (2) for willfully and knowingly attempting to defeat and evade a large part of the taxes due and owing by the corporation for the same taxable year. After a jury trial in the District Court for the Territory of Alaska, Third Division, both defendants were convicted. Petitioner was fined $2,500 on each count and sentenced to imprisonment for a period of three years on each count, such imprisonment sentences to run concurrently, with both sentences, except that portion providing for the fine, suspended until further order of the Court. If he failed to pay the fine, he was to be committed to prison for a period of one day for each $2 thereof. Petitioner's wife was sentenced to imprisonment for a period of 11 months and 29 days on each count, such sentences to run concurrently, with both sentences supended until further order of the Court. The corporation's failure to report all of its gross income and to pay taxes upon its proper net income for each of the taxable years 1943 and 1944 was due to the fraud of petitioner and his wife. At least a part of each of the deficiencies *12 in income tax, declared value excess-profits tax and excess profits tax determined against the corporation for each of the years 1943 and 1944 is due to fraud with intent to evade tax. At least a part of the deficiency in income tax determined against petitioner for each of the years 1943, 1944 and 1945 is due to fraud with intent to evade tax. Opinion We think respondent's burden of proving fraud has been sustained. There was gross understatement of income of such character and magnitude as at least to require explanation. . Two sets of corporate books were kept. See . There was no appearance for either petitioner, and no attempt at any explanation. See , affd. (C.A. 10) . Accordingly, Decisions will be entered for the respondent.